**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JEAN STONE, )<br>)<br>        Plaintiff, )<br>)<br>  v. )<br>)<br>UNUM LIFE INSURANCE )<br>COMPANY OF AMERICA, )<br>)<br>        Defendant. ) | No. |

## **COMPLAINT**

Now comes the Plaintiff, JEAN STONE, by her attorneys, MARK D. DE BOFSKY and DE BOFSKY LAW, LTD., and complaining against the Defendant, UNUM LIFE INSURANCE COMPANY OF AMERICA, she states:

*Jurisdiction and Venue*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 ("ERISA"); and in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f). Those provisions give the district court jurisdiction to hear civil actions brought to recover benefits due under the terms of employee welfare benefit plans, which, in this case, consists of group long-term disability ("LTD") benefits.

2. This action may additionally be brought before this court pursuant to 28 U.S.C. § 1331, which gives the district court jurisdiction over actions that arise under the laws of the United States.

3. The ERISA statute provides, at 29 U.S.C. § 1133, a mechanism for administrative or internal appeal of benefit denials. Those avenues of appeal have been exhausted.

4. Venue is proper in the Northern District of Illinois pursuant to ERISA § 502(e)(2) (29 U.S.C. § 1132(e)(2)) because Plaintiff resided in this District and received benefits under the welfare benefit plan in question while she lived in this district, and was a resident of this district when her benefits were terminated.

5. Venue is also proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred within this district.

## *The Parties*

6. The plaintiff, Jean Stone ("Stone" or "Plaintiff"), age 54 (born in 1967), is currently a resident of St. Cloud, Minnesota, but lived in Glen Ellyn, Illinois, at all times relevant hereto.

7. The defendant, Unum Life Insurance Company of America ("Unum" or "Defendant"), was, at all times relevant hereto, doing business throughout the United States and within the Northern District of Illinois, and Unum insured Plaintiff while she was living and working in the State of Illinois.

## *Nature of the Action*

8. This action is brought as a claim for benefits pursuant to ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)). Stone seeks payment of LTD benefits due under an LTD group policy of insurance: group policy number 215783 ("Policy"), underwritten and administered by Unum for the benefit of employees of MedExpress Urgent Care (a true and accurate copy of the Policy provided to Plaintiff and represented as the governing plan document is attached hereto as Exhibit "A").

9. At all times relevant hereto, the LTD Policy constituted an "employee welfare benefit plan" as defined by ERISA § 3(1) (29 U.S.C. § 1002(1)); and incident to her employment

with MedExpress Urgent Care, Stone received coverage under the LTD Policy as a "participant" as defined by ERISA § 3(7) (29 U.S.C. § 1002(7)).

10. Plaintiff also seeks attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and ERISA § 502(g), as well as all other remedies this Court sees fit to award.

### *Relevant LTD Policy Provisions*

11. The LTD Policy provides monthly disability income benefits for participants that meet the following definition of "Disability" (quoted in relevant part):

> **All Employees not eligible in another group**
>
> You are disabled when Unum determines that
>
> -you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury,** and
> -you have a 20% of more loss in your **indexed monthly earnings** due to the same sickness or injury
>
> After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience
>
> **For Registered Nurses**
> Your regular occupation means your specialty in the practice of nursing which you are routinely performing when your disability begins.
>
> You must be under the regular care of a physician in order to be considered disabled.
>
> The loss of a professional or occupational license or certification does not, in itself, constitute disability.

Ex. A at LTD-BEN-1

12. The Policy also defines the following relevant terms as follows:

> **Indexed Monthly Earnings** means your monthly earnings adjusted on each anniversary of benefit payments by the lesser of 10% or the current annual percentage increase in the Consumer Price Index. Your indexed monthly earnings may increase or remain the same, but will never decrease.

3

> The Consumer Price Index (CPI-U) is published by the U.S. Department of Labor. Unum reserves the right to use some other similar measurement if the Department of Labor changes or stops publishing the CPI-U.
>
> Indexing is only used as a factor in the determination of the percentage of lost earnings while you are disabled and working and in the determination of gainful occupation.
>
> **Limited** means what you cannot or are unable to do.
>
> **Material and Substantial Duties** means duties that:
> - are normally required for the performance of your regular occupation; and
> - cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Unum will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.
>
> **Regular Occupation** means the occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.
>
> **Sickness** means an illness or disease. Disability must begin while you are covered under the plan.

Ex. A at GLOSSARY-2, 3, and 4

*Statement of Facts*

13. Prior to March 24, 2018, Stone was employed by MedExpress as a registered nurse.

14. Stone has not been able to work since March 24, 2018 due to fibromyalgia. Although Stone also has other co-morbid impairments, Unum determined that Stone was disabled due to fibromyalgia and awarded her monthly long-term disability benefits in the amount of $3,339.59 which began after a 180 day elimination period that began on March 25, 2018.

15. In addition to her long-term disability benefits. Stone concurrently applied for Social Security disability insurance benefits. Her application was successful; and as a result of the Policy's coordination of benefits between long-term disability and Social Security payments,

4

the payments from Unum were reduced by Social Security benefits in the amount of $1,910 per month, resulting in a net monthly benefit of $1,439.59.

16. Although there was no improvement in Stone's condition, Unum terminated her benefit payments on December 11, 2020, even though benefits were payable to November 7, 2034 so long as she remained disabled. Unum did so based on record reviews conducted by in-house physicians; and at no time did Unum request that Stone be examined by a doctor of its choosing even though the Policy afforded Unum that right.

17. Following the termination of her benefits, Stone exercised her rights under 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1 to seek a "full and fair review" by submitting an appeal of the denial of her benefits. With her appeal, Stone submitted extensive medical evidence in support of her ongoing disability, which included records and reports from a treating university-affiliated rheumatologist, along with other medical records and reports.

18. Upon receipt of the claim appeal, Unum once again reclied on an in-house doctor's file review. That review, which was performed by a doctor who has a bias against fibromyalgia claims, was used in support of a determination upholding the benefit termination.

19. When Unum denied Plaintiff's claim and while it was addressing her appeal, it was operating under a structural conflict of interest based on its dual role as the benefit funding source and as the party deciding on Stone's entitlement to benefits. That conflict was augmented by Unum obtaining medical reviews from an biased in-house doctors rather than an independent physicians, and by its recognized history of improper claim determinations.

20. Unum's denial of Stone's long-term disability benefits was arbitrary and capricious and against the weight of the medical evidence and was the product of biased claims handling

5

and was the result of a conflict of interest rooted in unfounded and unsupported medical reviews performed by non-treating physicians.

21. Stone is entitled to LTD benefits due since December 12, 2020, plus any interest that has accrued thereon; and she is also entitled to a declaration of rights that her benefits remain payable thereafter so long as she continues to meet the Policy's terms and conditions.

22. All required avenues of administrative appeal to Unum have now been exhausted, and this matter is therefore ripe for adjudication.

### *Relief Sought*

WHEREFORE, Plaintiff prays for the following relief:

A. That the court enter judgment in Plaintiff's favor and against the Defendant and that the court order the Defendant to pay all accrued long-term disability benefits to Plaintiff in an amount equal to the contractual amount of benefits to which she is entitled from December 12, 2020 to the present;

B. That the Court order the Defendant to pay Plaintiff compounding prejudgment interest on all contractual benefits that have accrued prior to the date of judgment in accordance with 29 U.S.C. § 1132(a)(1)(B) or 29 U.S.C. § 1132(a)(3);

C. That the Court order Defendant to continue paying Plaintiff LTD benefits in an amount equal to the contractual amount of benefits to which she is entitled through the Policy's maximum benefit period, so long as she continues to meet the Policy's conditions for continuance of benefits;

D. That the Court award Plaintiff her attorney's fees pursuant to 29 U.S.C. § 1132(g); and

E. That Plaintiff be awarded any and all other contractual and/or equitable relief to

which she may be entitled, as well as the costs of suit.


Dated: August 1, 2022                                             Respectfully Submitted,

/s/ *Mark D. DeBofsky*
*Attorney for Plaintiff*

Mark D. DeBofsky
DeBofsky Law, Ltd.
150 N. Wacker Dr., Suite 1925
Chicago, IL 60606
(312) 561-4040 (phone)
(312) 929-0309 (fax)